CHARLES SAPP and ALICE SAPP, his Wife *vs.* THE
NORTHERN CENTRAL RAILWAY COMPANY.

*No Presumption of a Grant of a Private Way along the Sides of,
or over the Tracks of a Railroad Corporation—No Power in
a Railroad Corporation to grant such an Easement—Ex-
emplary or Vindictive Damages.*

A railroad corporation has no power or right to grant an easement
of a footway, for persons to walk along or by the side of their
tracks. There can be no prescriptive right, or presumption of such
a grant; though the appellants and others, owning houses along
the line of the appellee's railroad, for twenty-five years, had used a
private footway, for some considerable distance over the lands of
the appellee, alongside of, or between the tracks of the road, from
the houses to a public highway.

The appellee took down a stone wall and erected a fence in front of
the appellants' houses, which fence was part of a line of fence which
the appellee had erected around its tracks for the protection of the
same from intrusion, to facilitate the management of its business
and the safety of the trains moving upon its road. There was
nothing to show that the appellee did not do this in good faith, and
with an endeavor to keep the fence within its own lines and on
its own land. In an action of trespass *quare clausum fregit* against
said corporation, it was HELD:

That the appellee was not guilty of a wanton and malicious trespass
on the appellants' close, and there was no evidence to justify
vindictive damages.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the follow-
ing prayers:

1. If the jury find that the plaintiff, Alice Sapp, was the
owner of the house and lot in question, and that the de-

fendant broke into the same and tore down the front wall, and erected on her lot the fence mentioned in the evidence, then the plaintiffs are entitled to recover.

2. If the jury find from the evidence in the case that the plaintiff, Alice Sapp, and those under whom she claimed had for a period of twenty years prior to the time of the injury complained of, been in the quiet and peaceable possession of the land in question, and the defendant entered thereon and tore down her wall and erected the fence mentioned in the testimony, then the plaintiffs are entitled to recover.

3. If the jury find from the evidence that Alice Sapp was in peaceable possession of the house and lot mentioned in the evidence, including the stone wall in front thereof, and shall further find, that the defendant broke and entered said premises and tore down said wall and erected a high board fence upon the ground on which said wall had stood, then the plaintiffs are entitled to recover.

4. If the jury find the facts set forth in the first or second or third prayer, then the plaintiffs, in addition to actual damages, are entitled to recover exemplary damages, if they find that the said acts complained of were malicious and oppressive, and in determining whether said acts were malicious or oppressive they must take into consideration all the circumstances which accompany and give character to the trespass.

5. If the jury find from the evidence, that Mrs. Sapp, and those under whom she claims title to the lot on which she now resides, were accustomed for a period of more than twenty years prior to the institution of this suit, and the erection of the board fence mentioned in the evidence, to pass and repass on foot from the premises in question, over the land of the defendant to a public highway, for the more convenient use and occupation of said premises, and that such user during all that period was open, notorious, adverse and uninterrupted and under a claim of right

on the part of such owners and occupants; and shall further find that the defendant obstructed and prevented such ingress and egress to and from said premises, by the erection of the fence mentioned in the evidence, then the plaintiffs are entitled to recover under the second count in the declaration, such damages as the jury under all the circumstances, taking into view the motives of the parties as disclosed in the evidence, may think proper to allow.

The defendant offered the following prayers:

1. That by the true construction of the deeds offered in evidence by the plaintiffs as their paper title, the lot of the plaintiff extends 150 feet from the 25 foot road, mentioned in said deeds, and said road is by said deeds fixed to be distant 150 feet from the Northern Central Railway, and if the jury shall find that the fence erected by the defendant is 156 feet easterly from the east line of said 25 feet road, then the said fence is not on the ground conveyed to the plaintiff, and the plaintiff cannot recover in this action for the erection of said fence, although the jury may find that more than twenty years before its erection, those under whom the plaintiff claims had erected a wall four feet high in front of the plaintiff's lot, and on the present line of said fence, and had maintained it up to the time when said fence was erected.

2. If the jury shall find that the fence erected by the defendant along the west side of its tracks, and shown on the plat offered in evidence by the defendant, is 156 feet easterly from the east side of the 25 feet road mentioned in the deeds, offered in evidence by the plaintiffs, and that prior to the erection of said fence by defendant, those under whom the plaintiffs claim had erected a fence along that side of the lot, (described in said deeds,) which binds on the railroad, and parallel or nearly so with the railroad, together with two side fences running perpendicular thereto, and so enclosing the yard in front of the house, and outside of said fence so erected, had also erected a

stone wall four feet high, parallel with said railroad, and shall further find, that the fence erected by the defendant, was erected on the line of said wall and outside of said fences so erected by the plaintiffs, or those under whom they claim, then the plaintiffs cannot recover in this action under the first count in the declaration, for the erection of said fence by the defendant, although the jury may find that said wall was erected more than twenty years ago.

The Court, (DOBBIN, J.,) granted the second and third prayers of the plaintiffs, and rejected their first, fourth and fifth prayers, and rejected the defendant's prayers.

The plaintiffs excepted. The verdict was for the plaintiffs for $125 damages, and judgment was entered accordingly. The plaintiffs appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and ROBINSON, J.

*William A. Hammond* and *F. C. Slingluff*, for the appellants.

The jury would have been authorized, from the circumstances of this case to find that the acts complained of were malicious and oppressive, and thus within the well-recognized principle, authorizing exemplary damages. *Sedgwick on Damages, mar.* 466, *n; Boone's Case,* 45 *Md.,* 344; *Moore vs. Schulz,* 31 *Md.,* 418; *The Barton Coal Co. vs. Cox,* 39 *Md.,* 1; *Bannen vs. B. & O. R. R.,* 24 *Md.,* 108; *Snively & Keyes vs. Fahnestock,* 18 *Md.,* 391; *Ridgely vs. Bond and Wife,* 17 *Md.,* 14.

The plaintiffs' fifth prayer, which was rejected, contained all the elements necessary to give a right of way by prescription, to wit: twenty years of open, notorious, adverse and uninterrupted user, under a claim of right. *Washburn on Easements,* 178, 229; *Day vs. Allender,* 22 *Md.,* 511; 4 *Gray,* 547; 10 *Penn. St.,* 126; 2 *Whart.,* 431; *Tyler vs. Wilkinson,* 4 *Mason,* 404.

Sapp and Wife *vs.* Northern Central Railway Co.

The enclosure of a portion of a highway by a fence, continued for twenty years, gives ownership. *Knight vs. Heaton*, 22 *Vermont*, 480 ; *Cutter vs. Cambridge*, 6 *Allen*, 20.

There is nothing inherent in the nature of a railroad giving it immunity from the operation of prescriptive rights, nor is there anything in the charter of the defendant authorizing such an assumption.

A right of way would not be inconsistent with its use as a railway, and a grant of such right of way would, therefore be perfectly valid. *Petticord's Appeal*, 34 *Md.*, 463.

In a somewhat similar case, where a way across a bridge, erected by a canal company was claimed by prescription, TINDEL, C. J., said he "saw no reason why the public might not by user gain a right of way against them, (the canal company,) as well as against any other individuals." *Grand Surry Canal Co. vs. Hall*, 1 *Man. & G.*, 392, (39 *E. C. L.*) *Vide* also, *The Episcopal Church vs. Newbern Academy*, 2 *Hawks.*, (*N. C.*,) 233 ; *Johnson vs. Ireland*, 4 *East*, 279.

*Bernard Carter*, for the appellee.

There are certain principles of the law relating to obtaining a right of way by prescription, over another's land, which show that a right of way, such as is claimed by appellants over the roadway of the appellee, cannot be acquired by prescription.

*A.* A prescription, to be good, must be reasonable.

As title by prescription is founded on a presumption of a grant, the possession must be such as to render such a presumption reasonable. *Washburn on Eas.*, 128 ; *Thomas vs. Marshfield*, 13 *Pickering*, 248.

The right to use the tracks of a railway, such as that of appellee, as a footway or wagon-way, (not for purposes of crossing, but lengthwise,) *adversely* to the railway company, would be so destructive of its proper management and operation as to be a most *unreasonable* privi-

lege to have been *granted;* and, therefore, according to the foregoing authorities, cannot be *prescribed* for.

*B.* As title by prescription is founded on the presumption of a *grant,* it follows that in order to establish a prescriptive right it must be claimed under and through some one who had the right to create or grant the estate claimed. *Washburn on Eas.,* 120, *sec.* 14.

No right exists in the appellee to make such a grant. It would be *ultra vires. Stafford vs. Birmingham C. Co.,* 1 *Eng. and Irish Appeal Cases,* (*Law Reports,*) 254; *Rockdale Canal vs. Radcliff,* 18 *Ad. & Ell.,* (83 *Eng. Com. Law,*) 287; 15 *Md.,* 240; 104 *Mass.,* 1; *Washburn on Easements,* 160; 2 *Wash. on Real Pr.,* 323–324–325; 3 *Wash. on Real Pr.,* 135.

*C.* The use from which a presumption of a grant is to be implied, must be *exclusive* and *adverse;* otherwise it will be regarded as permissive, or under an *implied license,* and so terminable at the will of the owner of the land. And thus where ground is left open for convenience or ornament, the passage of persons over it, *in common* with those for whose use it is appropriated, is to be regarded, not as adverse, but permissive, and under an implied license. *Kilburn vs. Adams,* 7 *Metcalf,* 33; *Washburn on Eas.,* 145; 18 *Conn.,* 321; *Harper vs. Parish,* (*Advent,*) 7 *Allen,* 478; *Gittings vs. Moale,* 21 *Md.,* 48.

So no one by pasturing cattle on a highway can acquire a right by prescription to do so. *Washburn on Eas.,* 135.

All that the appellants proved as to the nature of the user by them, and those under whom they claim, of the railroad of the appellee is, that it had been for twenty-five years "continuous and uninterrupted, and had never been interfered with by any one connected with the railroad until the erection of the fence, the erection which caused this suit; and that said owners used said railway as said footway, *considering* that they had a right so to use it, and not as a favor from the company."

Upon the authorities just quoted, this user was neither adverse nor exclusive, but "permissive," and under an "*implied license.*"

As long as such a use did not interfere with the proper operations of the railroad, it might well be *permitted*, without the railroad company supposing the user was adverse or under any claim of right.

Persons constantly are seen walking on the railway tracks of all our railways; but not until this case has any one supposed that by so doing they were acquiring an easement adverse to the railway company, which, if continued for twenty years, would be presumption of a grant of a *right* ever after to make a footway of the railway.

*D.* If such a permissive user ripens into a right, then in case the company should in the future need to change their grade and so destroy the footway, they would have no right to change their grade; and so their operations might be brought to a stand-still.

It is well settled that the use and enjoyment of what is claimed, must have been *adverse*, under a claim of right, exclusive, continuous, uninterrupted, and with knowledge and acquiescence of the owner of the estate in or over which the easement prescribed for is claimed. *Washburn on Easements*, 131; *Day vs. Allender*, 22 *Md.*, 529.

In order to be adverse, it must be under a *claim* of right, made with knowledge of the owner, and being so made, acquiesced in by such owner. The appellants made no claim *of right* with the knowledge of the railway company; all the evidence says on this point is, that they used the railway as a footway, *considering* that they had a right so to use it, and not as a favor from the company, and that they were not *interrupted*. The company, *even if knowing that they used the track,* had no reason to suppose that it was under a claim of right. There was nothing in such a user to indicate to the company that the persons so using, did so under a claim of right; and there-

fore, no reason for the company to interfere to stop it until such use became inconvenient to their proper working of their road.   See *Washburn on Easements,* 132.

Nor is there any evidence of knowledge on the part of the company.   Such knowledge is necessary.   If no knowledge, of course no acquiescence.   But acquiescence is necessary.

The burden of proof is on the appellants.   *Washburn on Easements,* 131, 132, 160, 162, 163.

A right cannot be claimed by prescription to pass over another's land in several different directions, to suit the convenience of him who claims the way.   In order to gain a prescriptive right of way, it must be over a *uniform route.   Washburn on Easements,* 128, 132; *Jones vs. Percival,* 5 *Pick.,* 484; *Brice vs. Randall,* 7 *Gill & J.,* 349.

The evidence here shows that there was no definite route or boundaries to the way as used.   It was sometimes on the west side, sometimes on the east side of the tracks, and sometimes between the rails.   It was anywhere and everywhere, according to the caprice of the parties.

MILLER, J., delivered the opinion of the Court.

This action was brought by the appellants against the appellee.   The declaration contains two counts, the first in trespass *quare clausum,* and the second in *case* for obstructing an alleged right of way, claimed by the plaintiffs by prescription, from their premises over the land of the defendant to a public highway.   The most important question in the case, and the one we shall first consider, involves the plaintiffs' right to recover under the second count.

The proof shows in substance that more than twenty-five years before the commencement of this suit, a row of small houses, one of which is now owned by the plaintiffs, had been built just outside of the limits of the city of Bal-

timore, fronting on the defendant's railway. They were built on the ground elevated several feet above the bed of the railroad, and this ground was sustained by a wall built along in front of all the houses. They were all built some ten or twelve feet back from the line of the railway, with small front yards, and each of them was enclosed with a small fence ; through which was a gate with steps leading down to the railway, and the mode of ingress and egress to the front of these houses was through these front gates. During all this period of twenty-five years, persons, including the plaintiffs and those under whom they claim, in walking to and from these houses, used the railway company's ground alongside of the tracks, (there being a space of fifteen feet more or less between the westernmost track and said stone wall and also space to the east of the track), as their *footway* when going from their houses to North avenue after it was opened, and from this avenue to their houses, and when more convenient they used the tracks themselves when thus walking. Before the avenue was opened there was a road, access for foot passengers to and from which to the front of these houses was by way of the company's land and tracks as above described. This user had been continuous and uninterrupted during all this time, and had never been interfered with by any one connected with the railway, until the obstruction complained of. Those who had owned the plaintiffs' property during all this period testified they had no other footway from the houses to the highways spoken of, and that they used the railway as such footway, considering they had a right so to use it, and not as a favor from the company. Two of these witnesses on cross-examination testified that they did not confine themselves to the use of the railroad as a footway between their houses and the highways, but also used the same for such purpose as far down frequently as Bolton Station in the city, a distance of one-fourth of a mile or more, and used this latter part in the same way

·and·considering they had the same right to do so, as they had to that part leading from their houses to the highways. Within a year before suit brought, the defendant took down the stone wall in front of these houses and erected a fence some nine feet high on the inner edge of .the wall, and thus blocked up this mode of exit from the houses to the Company's land, so that it was impossible to get from the front yards of the houses to the railroad way, or from the railroad to the front of the houses, without climbing over this fence. The fence in question was part of a longer line of fence erected around their railroad tracks, and its erection was deemed necessary by the Company to protect its property from intrusion, and to facilitate the management of its business, and the safety of trains moving on its road. The space between this fence and the main track, has been all occupied since its erection, with tracks which are necessary for the operation of the road, and all of this space is needed for the proper operation of the railroad. These are all the material facts on this subject, and they are undisputed. By rejecting the plaintiffs' fifth prayer the Court denied their right to recover for the obstruction of this alleged right of way. Is this ruling correct?

It appears from the facts stated that the easement set up is that of a private footway for some considerable distance, over the lands of a *railroad corporation*, alongside of or between the tracks of the road from the house of the plaintiffs to a public highway. Without stopping now to consider other essentials of an easement by prescription, it is familiar and elementary law, that title by prescription is founded on the presumption of a grant, and it follows from this that in order to establish a prescriptive right it must be claimed under and through some one who had *a right to grant or create* the easement claimed. *Wash. on Easements*, 120. That a railroad corporation has no power or right to grant an easement like this, of *foot-*

*ways* for persons to *walk along* their tracks or by the side of them, seems an almost self-evident proposition. It is obvious that if such power existed and were exercised it would be subversive of the very purposes for which railroad charters are granted. But the principle, if it needed authority for its support, has been decided. Thus where a company was authorized by Act of Parliament to construct and operate a canal for public use and the defendant erected a mill and steam engine upon its banks and drew water therefrom for operating the same, and to an action for doing this pleaded a prescriptive right so to use the water, the Court held that such right could not be maintained, for it implied an original grant thereof by the company to him, and they had no right to make any such grant or to use the water for any purpose except for that of a canal. *Rockdale Canal Co. vs. Radcliffe*, 83 *Eng. C. L. Rep.*, 287. In that case Lord CAMPBELL says : "Had the Company made a grant of the water in the terms of the plea, such a grant would have been *ultra vires* and bad," and EARLE, J., in a very terse judgment states the whole law of the case thus : "This is a case to impose a servitude upon the canal by virtue of a twenty years' user. The party seeking to establish such a claim must show a grant by a person capable of making the grant relied on. Now the grant here is by persons having no distinct ownership of the water, but entitled only to the flow of it for the purpose of the navigation and having no right to the surplus. If it had appeared by direct evidence that the company had made a grant to the purport now supposed, that grant would have appeared to be against the right of the public and void upon the face of it. The twenty years' user therefore could establish no right." So where a canal company had a right to the necessary quantity of water for passing the boats which made use of their canal, but no right to grant away any of the water in the same, it was held that no other party could claim any right by

prescription to draw water from this canal so as to deprive
the canal company of the requisite quantity to operate
the boats, because the company could not have rightfully
granted away the use of the water which they had a right
to enjoy for a specific purpose for the benefit of the public.
*Staffordshire Canal vs. Birmingham Canal, Law Rep.,* 1
*Eng. and Irish Appeals,* 254. That case was decided by
the House of Lords, and Lord Chancellor CHELMSFORD, in
delivering his judgment, says: "To impose such a servi-
tude upon the water in their canal as that contended for
by the appellants would have been *ultra vires* of the re-
spondents, and consequently length of user could never
confer an indefeasible claim upon the appellants under the
Prescription Act, as no grant of the use of the water could
have been lawfully made by the respondents." And Lord
.WESTBURY, with equal force, says in his opinion: "But
if the Prescription Act had been at all applicable, it would
be incumbent on the appellants to prove that the right
founded on the claim by user, might, at the beginning of,
or during that user, have been lawfully granted to them
by the respondents. No such proposition can be main-
tained. Had any grant been made at any time by the
respondents' company of the right now alleged by the
.appellants to have been acquired against them by user,
such grant would have been *ultra vires* and void, as amount-
ing to a contract by the respondents not to perform their
duty by improving their navigation and conducting their
undertaking with economy and prudence." We have been
referred to no authority and have found none in which the
doctrine of these decisions has been controverted. Cases
may be found like that of *Grand Surry Canal Co. vs. Hall,*
1 *Man. & Gr.,* 392, in which the *public* was held to have
acquired by user the right to travel *across* a canal upon a
*bridge built over it* by the company for accommodating
the tenants of an adjoining estate, but it is plain that
such cases are very different in principle from the one before

us. We are therefore clearly of opinion that the Court below committed no error in the ruling we have been considering.

The only other question in the case arises upon the rejection of the plaintiffs' fourth prayer. By granting their second and third prayers the Court allowed them to recover under the first count in the declaration, but by rejecting their fifth, refused to direct the jury that they might allow *exemplary damages* if they found the acts complained of were *malicious and oppressive*, and in this we find no error. There is no evidence in the record that the defendant in removing the wall and erecting the fence committed a wanton and malicious trespass upon the plaintiffs' close. On the contrary, all that the record discloses on this subject is that the defendant took down the wall and erected the fence in front of the houses. This fence was part of a longer line of fence which they erected around their tracks for the protection of the same from intrusion, and to facilitate the management of their business, and the safety of the trains moving upon their road. There is nothing to show they did not do this in good faith and with an endeavor to keep the fence within their own lines and on their own land. In fact, so far as we can discover from the deeds and plat offered in evidence, the fence was actually placed on the defendant's land and there was no trespass committed. At all events, if any was committed, there is an entire absence of proof tending to show that it was done with wantonness or malice. We therefore agree with the learned Judge of the Superior Court that there was no evidence to justify vindictive damages.

*Judgment affirmed.*