(Decided 16th March, 1887.)

THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* JAMES A. GOULD, Trustee.

*Ejectment—Effect as between Grantor and Grantee of Describing land as Binding on a Street.*

Where land in a city is described in a deed as binding on a street, designated on a plat of the city, but not opened or used as a street, the grantor being at the time the owner of the land on both sides and in the bed of the street, the subsequent closing of the street by the municipal authorities, does not give the grantee any claim to the bed of the street to the centre thereof in front of his abutting lot, and his grantor may recover the same from him in ejectment.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court. The leasehold interest in the land mentioned in the opinion as conveyed to J. Alexander Preston, was, subsequently, and before the institution of the suit, acquired by the appellant. The case was tried before the Court below upon an agreed statement of facts.

*Exception.*—The plaintiff offered the following prayer: The plaintiff prays the Court to declare as the law of this case, that upon the facts contained in the agreed statement of facts filed in this case, the plaintiff is entitled

to recover the land described in the amended declaration, and damages for the use and occupation thereof by the defendant; the said land being the western half of the bed of Henry street, between Winder street on the south, and Wells street or Ohio avenue on the north.

The Court (STEWART, J.) granted this prayer. The defendant excepted, and the verdict and judgment being against it this appeal was taken.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Hugh L. Bond, Jr.,* and *John K. Cowen,* for the appellant.

*W. L. Marbury,* for the appellee.

IRVING, J., delivered the opinion of the Court.

This was an ejectment brought by the appellee against the appellant for the recovery of a strip of land, being the one-half of the bed of "Henry street," between "Winder street" and "Wells street," as those streets are laid down on "Poppleton's plat" of the City of Baltimore. "Henry street," however, was never actually opened by the city as a street, or used as such, and had been in fact closed by order of the City Council and rejected as a street before the institution of this suit. The land on both sides of Henry street, as laid down on Poppleton's plat, (where the land sued for lies,) belonged to Alexander Gould, Senior. By his will he gave it to trustees, with power to sell in whole, or in lots, as they thought best, and to open such streets as they thought proper. The plaintiff in this action, (the appellee) is, by decree of the Circuit Court of Baltimore City, the legitimate successor to the trustees named in the will, who have either died or resigned. The originally appointed trustees sold to J. Alexander Pres-

ton a portion of this land, all of which at the time was unimproved land. In the report of sale which was ratified by the Court, the land sold to Preston is thus described: "all that parcel or square of ground situated in the City of Baltimore, and which is bounded by 'Winder street' on the south, 'Johnson street' on the west, 'Wells street' on the north, and 'Henry street' on the east." In the deed of the trustees to J. Alexander Preston for the property thus sold him, and dated the 2nd of December, 1872, it is described as follows: "Beginning for the same at the corner formed by the intersection of the north side of Winder street and the east side of Johnson, (*street*) and running thence easterly binding on the north side of Winder street three hundred and seventy-nine feet more or less to the corner formed by the intersection of Winder and Henry streets; thence northerly binding on the west side of Henry street three hundred and twenty feet more or less to the corner formed by the intersection of Henry street and Wells street as now laid out and widened; thence westerly binding on the south side of Wells street three hundred and seventy-nine feet more or less to the intersection of Wells and Johnson street; thence southerly binding on the east side of Johnson street to the place of beginning—containing two and one-half acres more or less." As already stated, at the date of this sale and deed, the grantors owned the land on both sides of this projected "Henry street." Subsequently to this conveyance, to wit, in March, 1874, the trustees conveyed to the appellant the land on the other side of "Henry street," and, by *express description*, in that deed, the conveyance was, in terms, " *to the center* of Henry street." It is an *admitted fact* in the cause that, at the time of these deeds being executed, Henry street had not been opened as a public street, nor actually used as a public highway, and had not been used as a private way. It is also admitted that, by an ordinance of the city approved on the 9th of

November, 1874, Henry street was by proper officers closed, and damages were assessed to the appellant as the owner of the property on each side of the street so closed, to the amount of five hundred dollars, and the appellant was also assessed to the amount of seven hundred and twenty-five dollars for benefits for the acquisition of the bed of the street free from the public easement. In all which the appellant acquiesced and settled with the city accordingly.

By the well established law as laid down in *White vs. Flannigain,* 1 *Md.,* 525, and *Moale vs. Mayor, &c., of Balto.,* 5 *Md.,* 314, and *Hull vs. Mayor, &c., of Balto.,* 56 *Md.,* 188, the deed to Preston, by calling on the street, operated as a covenant that the grantee should have a permanent right to use the street as such. In fact, by so calling on a street laid out on the public plat of the city made by due authority, there is a dedication by its owner of the use of such street by the public as a street. The owner may retain the fee by a description which does not cover the street, and does not convey it to the grantee; but such fee is burdened with the easement which the deed gives, by necessary implication, in calling for the street; and the easement is confined to a use of the street for the purposes of a street. When that is abandoned entirely, as and for a street, by the public and the grantee, if the road-bed has not been conveyed, the unrestricted rights of the grantor will revive; and the implication spoken of will interpose no obstacle to a recovery of possession by the grantor of the abutting lots, from the grantee thereof, if he has appropriated the road-bed to his individual use as his property. As we have already seen, the street which was mentioned in Preston's deed has been abandoned by the city with the *acquiescence* of the appellant who has been paid for the injury he was supposed to sustain by the closing of the street between his lots.

If therefore, the deed to Preston does not convey the street-bed, to the center thereof, the Court committed no

Balto. & Ohio Railroad Co. *vs.* Gould, Trustee.

error in allowing a recovery to the extent claimed in the declaration.

The ordinary presumption is, that a conveyance of land bordering on a highway, carries the fee to the centre of the highway, so that the question always is, whether the description of the deed is such as to repel this presumption, and exclude the road-bed from the operation of the conveyance. *Mr. Angell*, in his work *on Highways, sec.* 314, says, "whether the soil passes or not, is *purely a question of intention*, to be ascertained in each case from the description contained in the deed, explained and illustrated by all the other parts of the conveyance, and by the localities and subject-matter to which it applies."

The same author in *section* 315, (*3rd Edition,*) says it may be stated "as a fair conclusion from the authorities, that a grant of land described as bounded generally 'by' or 'on' or 'along' a highway, carries the fee to the centre of the highway, if the grantor owns so far; and on the other hand, when the descriptive words are 'by the side of,' or 'by the margin of,' or 'by the line of,' or expressions equivalent thereto, the soil of the highway is excluded." Chancellor KENT states the law in the same way; and this Court, in *Peabody Heights Co. vs. Sadtler,* 63 *Md.,* 533, laid down the law in accordance with the view of those distinguished authors. This rule of construction, however, and of determining the question of intention on the part of the grantor, has not uniformly obtained; but in some of the States, stronger language, indicative of intention, is required to rebut the presumption of intent to grant the way as a part of the fee sold. But this Court having emphatically adopted the view of Chancellor KENT and Mr. Angell as a fair deduction from the weight of authority, it will not be necessary, or profitable, to review the cases cited from other States by the counsel for appellant, and relied on as containing the better law. We see no reason to depart from the view

Balto. & Ohio Railroad Co. *vs.* Gould, Trustee.

adopted in *Sadtler's Case*, (63 *Md.*,) and the only question for us to decide in this case, is whether the descriptive language in the appellant's title paper, (the deed to Preston,) is of such definite character as to lead to the same conclusion, as to intention, as the deed in *Sadtler's Case* did. In other words, it is whether this deed can be distinguished from that case in any way, so as to make this deed include the fee in the road-bed, whereas Sadtler's deed did not. No stone bounders are called for in this deed, as was the case in Sadtler's deed; but the description of the starting points and endings of the lines, and of how the line from one to the other is to bind, fixes the beginnings and endings of the lines with as much certainty and positiveness as if stones had been called for in the deed. We have already quoted the language of the deed, and following it *literally*, the counsel for appellant, with commendable candor, admitted that the road-bed was not included within the lines of the deed. The description could not be made more definite. The line is expressly made to " bind on the west side of Henry street." The very language is used which the authorities we have cited say, will rebut the presumption of intention to convey the fee in the street-bed, and which this Court decided in *Sadtler's Case* had that effect there. In the Sadtler deed the stones were described as located on particular sides of the road, and the lines from stone to stone were described as running *along the road*. Of course, being a straight line, it was held that it must, of necessity, follow the same *side* of the road on which the stones were located. Here, not only are the points of departure and ending quite as distinctly fixed, but the line from one to the other, is confined to particular sides of the streets in terms. As to the street here concerned, it is " to bind on the west side of Henry street." If possible, it is even more definite than the description in the Sadtler deed; and we are wholly unable to see any distinction between

the cases in favor of appellant's contention. The report of the sale filed by the trustees, gives no description of the property, save that it is a square of ground bounded by certain streets. The deed follows and makes the description more certainly intelligible as to the intention in the sale as to the street-bed. It operates as the deed in the case of *Langley, et al. vs. Jones, et al.*, 33 *Md.*, 179, was held to operate to make the description of the property more perfect and intelligible, than the sheriff's return had left it. The report, therefore, cannot be resorted to as supplying an intention by presumption, which has been expressly excluded and rebutted by the deed made to carry out the intentions in fact of the parties. Looking to the locations and subject-matter on which the deed was to operate, (as Mr. Angell says may be done,) it is not unreasonable to suppose the grantor intended to reserve to himself the fee, that the benefits of actual condemnation for public use or shutting the same up, when resorted to, (as had not then been done,) might result to him.

The argument of appellant's counsel was in reality against the soundness of the policy adopted in the decision in *Sadtler's Case*, and a contention that sound public policy did not justify adherence to the doctrine of Chancellor KENT and Mr. Angell adopted in *Sadtler's Case*. Public policy, it was contended, had induced a contrary view to prevail in many other places, and it was submitted that serious inconvenience and most unexpected results would follow in the City of Baltimore from adherence to the principles settled in *Sadtler's Case*. Such results may occur in some cases, but it will be because the parties to deeds have not taken the precaution to protect themselves, as was done by the appellant when it took its second deed direct from the trustees. We have been able to see no good ground for retracing our steps, as being contrary to sound public policy. We have been

able to find, in this case, no affirmative evidence of intention different from that which we have indicated the language used imports, according to the best accepted authority.

No objection was made to the plaintiff's prayer granted by the Court below, other than to the principles of law which it declared. From what we have said, it is apparent that we think there was no error, and the judgment of the Court below must be affirmed.

*Judgment affirmed.*

(Decided 16th March, 1887.)