Hunt *vs.* Brown.

(Decided 15th March, 1892.)

---

# GERMAN H. HUNT *vs.* ELIAS H. BROWN.

### *Deed—Boundaries—Highway.*

A deed conveyed a piece of land described as beginning at a fixed boundary—a post—and running thence, by courses and distances, to another fixed boundary; and thence, by courses and distances, to a fixed boundary planted on the south side of the Windsor

31                    v. 75.

Mill road; and thence bounding on this road, to another fixed boundary; and thence, with a straight line, to the beginning. HELD:

That the deed did not carry the fee to the centre of the Windsor Mill road.

APPEAL from the Baltimore City Court.

This was an action of ejectment brought by the appellee against the appellant and another, to recover a lot of ground embracing the southern half of the bed of the Windsor Mill or Liberty road, at its intersection with the west side of Gilmor street. The plaintiff offered in evidence the patent of Newington, dated 18th of June, 1789, to Alexander Lawson, which embraced 482¾ acres, including the land in controversy, and traced a clear paper title to himself. He also proved that there was no conveyance from any of those under whom he claimed, of the lot in question, unless it should be held to be included in the deed dated the 2nd of September, 1805, from Elizabeth Lawson to Solomon Betts, of lots 35 and 36 of Newington, in front of which latter lot the land in dispute lay.

The defendants offered evidence in support of their contention, and asked the Court, before which the case was tried without a jury, to rule that by the proper construction of the conveyance from Elizabeth Lawson to Solomon Betts of lots 35 and 36, dated the 2nd of September, 1805, the land to the centre of the Windsor Mill road was included, and the plaintiff was not entitled to recover. This instruction the Court (HARLAN, J.,) refused to give, and the defendant, German H. Hunt, excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Randolph Barton*, (with whom were *James M. Ambler*, and *Skipwith Wilmer*, on the brief,) for the appellant.

*William A. Hammond*, (with whom was *Alfred J. Carr*, on the brief,) for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This case falls directly, it seems to us, within the decision in *Peabody Heights Company vs. Sadtler*, 63 *Md.*, 533. No one questions that a grant of land bordering on a highway, carries as a general rule, the fee to the middle of the road, if the grantor is the owner of the fee. The law never presumes that in parting with his interest in the land adjoining a public way, the grantor meant to reserve the fee in the way, subject to the public easement. And hence a grant of land described as bordering *"on," "along"* or *"by"* a highway will by legal implication, carry the fee to the centre of the road. But this presumption, like all other presumptions, may be rebutted, and if it plainly appears from the language used and the nature of the property, the grantor meant to limit the grant to the line of the road, and to reserve to himself the fee in the road-bed subject to the use of it by the public as a highway, then, of course, this plainly expressed intention must prevail. And, whatever may be the rule elsewhere, it is well settled in this State that a grant of land by metes and bounds, and courses and distances, with calls for visible boundaries on the side of a highway; for instance a call for a stone planted on the south side of a road, and running thence, by the south side of the road to another stone, these calls and boundaries will be construed as defining the limits of the property thereby conveyed; and the grantee under such a grant will not take the fee to the middle of the road. Such was the description of the property in the Peabody Heights Company case. There the lot conveyed

was described as beginning at a certain stone planted in the presence of the parties on the southwest side of a road and running thence along and with the said road to another stone, planted in the presence of the parties, and the Court held that such a grant did not carry the fee to the middle of the road. In other words that the grantee was only entitled to the land within the courses and distances and boundaries thus defined. This must be the legal and logical construction of such a grant, however much Courts may be inclined from reasons of expediency and public convenience, to construe a grant as carrying the fee to the centre of a highway. Now, in this case, lot No. 36, the lot in question, is described as beginning at a post standing at the end of the first line of lot No. 35, and running thence north $65\frac{1}{2}$ degrees, east $24\frac{1}{4}$ perches to another post, thence north 10 degrees, west $20\frac{1}{4}$ perches to a post standing on the south side of said Windsor Mill road, thence bounding on this road north 87 degrees west 24 perches to another post, and thence with a straight line to the beginning, containing 3 acres and 6 perches of land. So here is a piece of land described as beginning at a fixed boundary and running thence by courses and distances to another fixed boundary, and thence by courses and distances to a fixed boundary planted on the *south side of the Windsor Mill road*, and thence bounding on this road to another fixed boundary, and thence with a straight line to the beginning, containing a given quantity of land. If we substitute *"stones"* for *"posts,"* we have the precise language used in the grant in the Peabody Heights Company, the only difference being that the stones were planted in the presence of the parties in that case, and here it does not appear whether the posts were planted at the time of the survey or whether they had been planted before that time. But this cannot affect the construction of the deed. According to the rule laid down in that case, we

Hunt *vs.* Brown.

must hold that the grant in this case does not carry the fee to the centre of the Windsor Mill road. Now, the ground upon which this and other like grants are held to be exceptions to the general rule, which carries the fee to the middle of the road, is the supposed intention of the parties as disclosed by the terms of the grant. It is a matter of legal construction. At the same time we cannot shut our eyes to the fact that in nine cases out of ten there is no intention either way on the part of the grantor or the grantee. We say no intention because the road-bed itself is a highway, dedicated or condemned for public travel, and the probability of its being closed or discontinued as such, is so remote that the fee in the bed of the road is seldom, if ever considered by the parties to the grant. And hence the property conveyed is generally described as running "to" or "along," or with the highway. In the course of time, however,—in a century or half of a century, as in this case, the road is closed as a highway, and then springs up a costly and harassing litigation about the title to this narrow strip of land, which before was practically of little or no value whatever. And to avoid litigation of this kind, involving the construction as to the intention of the parties, at the best sometimes doubtful, it would be better, it seems to us, to declare by legislative enactment, that all grants hereafter made of land bordering on a highway, shall carry the fee to the middle of the highway, provided the grantor is the owner of the fee, unless the fee is reserved in express terms to the grantor.

*Judgment affirmed.*

(Decided 15th March, 1892.)