## ELIZABETH SELLERS PECK ET AL. *v.* BALTIMORE COUNTY, MARYLAND

[No. 24, September Term, 1979.]

*Decided December 6, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*William A. Hylton, Jr.,* with whom was *Louise Michaux Gonzales* on the brief, for appellants.

*Jack R. Sturgill, Jr., Assistant County Solicitor,* with whom were *Leonard S. Jacobson, County Solicitor,* and *Harry S. Shapiro, Chief Assistant County Solicitor,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

This case involves the condemnation of the fee simple title to the bed of a street in Towson. Questions are raised as to whether the public easement was abandoned, whether a proposed use is within the scope of the easement, and the proper role of summary judgment. We cannot say as a matter of law whether there was or was not an abandonment because we conclude that triable issues of fact are presented. Accordingly, we hold that the Court of Special Appeals in affirming a summary judgment erred in *Peck v. Baltimore County,* 41 Md. App. 323, 397 A.2d 615 (1979). Thus, the case must be remanded for trial.

Baltimore County began a highway improvement program in the Towson area in 1973. This included a relocation of Bosley Avenue. (The facts here will be more clearly understood by reference to the attached plat.)

Appellants, Elizabeth Sellers Peck et al. (Peck), are the descendants of Washington Townsend. In 1862 Townsend acquired a large tract of land in the Towson area and then proceeded to sell off a number of lots.[1] Chief Judge LeGrand said for this Court in *White v. Flannigain,* 1 Md. 525, 540 (1852), "[W]here a party sells property lying within the limits of a city, and in the conveyance, bounds such property by streets designated *as such,* in the conveyance, or on a map made by the city, or by the owner of the property, such sale implies, necessarily, a covenant that the purchaser shall have the use of such streets." (Emphasis in original.) To like effect see *Tinges v. Baltimore,* 51 Md. 600, 609 (1879).

It is conceded that the easement created by the selling off of these lots is vested in the County and that the County holds nothing more than an easement in the Baltimore Avenue area at the present time.

On July 7, 1975, the County filed suit to condemn Peck's

---

1. The area in question was laid out prior to the enactment of Chapter 684 of the Acts of 1892 now codified as Maryland Code (1974) § 2-114, Real Property Article. It provides in pertinent part:

> Unless a contrary intention appears in the deed, ... if any deed ... grants ... land binding on any street or highway, or if any street or highway is one or more of the lines of the land, the deed ... passes to the ... grantee, all the right, title, and interest of the ... grantor in the street or highway. Except that to the extent the ... grantor owns other land on the opposite side of the street or highway, the deed ... passes the right, title, and interest of the ... grantor only to the center of that portion of the street or highway on which the two or more tracts coextensively bind.

This section does not affect a conveyance made prior to its enactment. Title, Incorporated v. Dubel, 177 Md. 387, 389, 9 A.2d 591 (1939), and cases there cited. However, Judge Henderson pointed out for the Court in Callahan v. Clemens, 184 Md. 520, 526, 41 A.2d 473 (1945), "The statute merely extends a presumption that was recognized at common law," citing Peabody Heights Co. v. Sadtler, 63 Md. 533 (1885).

Baltimore County is the abutting property owner of that portion of Baltimore Avenue here in question. The Court of Special Appeals perceived that title to the contested portion of the street was not necessarily in Peck, citing Rieman v. Baltimore B.R.R., 81 Md. 68, 31 A. 444 (1895); Hunt v. Brown, 75 Md. 481, 23 A. 1029 (1892); Baltimore & O.R.R. v. Gould, 67 Md. 60, 64, 8 A. 754 (1887), and *Peabody Heights.* It said it "ha[d] serious doubt, in light of the ... principles [it cited], as to whether appellants were correctly found to be the owners of the bed of Baltimore Avenue." Accordingly, on the first appeal it remanded the case in an unreported opinion to the Circuit Court for Baltimore County for a determination of ownership. The trial court then found title to the bed of the street in Peck. The County did not appeal that decision. Hence, it is the law of the case.

interest in the bed of Baltimore Avenue. The petition as initially filed said the land was sought "for the purpose of the construction of the new Bosley Avenue." Ultimately, however, it was amended by deleting those words and inserting that it was sought for the "landscaping of a mini-park on a portion of the parcel and to improve highway design for traffic flow on the remainder of the parcel, which will continue to serve as a public road as part of Baltimore Avenue, Bosley Avenue, and the public road serving the Baltimore County Jail." Although the County seeks to acquire 28,563 square feet of land from Peck, only the 9,500 square foot area marked with a crosshatch on the attached plat is in controversy here.

It is Peck's contention that the County has abandoned that easement. Peck's appraiser said that if Peck owned the land in fee simple without the encumbrance of an easement it would be worth $118,750. The County values it as subject to an easement and thus worth but $1.00, based upon the holding of this Court in *King v. Rockville,* 249 Md. 243, 238 A.2d 898 (1968).

In an answer to interrogatories the County said:

12. Since the purpose of the mini-park is to aid in traffic control and as a pedestrian thoroughfare in connection with a highway project funded by the State and Federal governments, we still consider it a part of the road system. There has been no formal road closing pertaining to this property.... Inspection records in the county indicate that the section of Baltimore Avenue sought to be condemned was physically closed to vehicular traffic by April 11, 1975....

13. The juncture of Baltimore, Susquehanna and Bosley Avenues was first used by the public at a time beyond the memory of any living person. The portion of the road at which Susquehanna Avenue intersects Baltimore Avenue and then flows to Bosley Avenue is visible on a photograph dated June 17, 1974.

A somewhat similar statement was made in an affidavit by a project engineer for the County. He also said, "Planning and engineering considerations on the general improvement scheme for Bosley Avenue began circa 1960. Development of landscaping schemes was in process by early 1973. The highway construction contract was executed June 13, 1973, and the landscaping contract executed January 20, 1976."

Photographs were part of the record. Peck's memorandum to the trial judge said:

> As shown on the photograph taken by the Baltimore County Office of Information and Research on June 17, 1974, a copy of which is attached hereto as Exhibit A, the realignment of Bosley Avenue under the Campbell contract had caused this parcel of land to cease to be used for road purposes by at least the middle of June, 1974. A photograph taken on May 19, 1974, by John W. Perry, Jr., a copy of which is attached hereto as Exhibit B, appears to show traffic control flashers barring entry onto the parcel by at least mid-May, 1974. Further, photographs taken by Mr. Perry on July 14, 1974, and August 18, 1974, copies of which are attached hereto as Exhibits C and D, respectively, show that the roadbed was torn up by at least the dates of those photographs. Further, all of the photographs clearly show a new routing of traffic onto Bosley Avenue by means of a new roadway to the west of the parcel of land in question.

It then referred to the answer to interrogatories which we have quoted above and said that this answer "admits that the new route was in operation by at least June 17, 1974."

In ruling on the motion for summary judgment the trial judge said:

> The Court has carefully and fully considered the affidavits and exhibits filed by the parties. There can be no doubt that there does not exist a material dispute of fact. It is clear that Baltimore County never intended to abandon the use of the property in question for its highway purposes. It is also clear,

beyond question, the use of a portion of the property for a "mini-park" and pedestrian thoroughfare is clearly incidental to the traffic control upon the adjacent highway.

Accordingly, he granted summary judgment in favor of the County and awarded Peck $1.00 in damages.

Peck here presents two contentions, (1) that the construction of an alternate way for traffic and the closure of Baltimore Avenue to vehicular traffic establish as a matter of law an intention on the part of the County to abandon the public easement as of the time of the closure, and (2) that in any event the mini-park is not within the scope of the easement. Since, as we shall hereafter develop, it cannot be said as a matter of law that the County has manifested an intention to abandon the public easement, a factual dispute concerning its intent is generated.

## I Abandonment

This Court has held repeatedly that whether an easement has been abandoned is a question of fact. We reviewed and discussed authorities to that effect in *D. C. Transit v. State Rds. Comm'n,* 265 Md. 622, 290 A.2d 807 (1972), and *D. C. Transit Systems v. S.R.C.,* 259 Md. 675, 270 A.2d 793 (1970). As Judge Gray put it for the Court in *Millson v. Laughlin,* 217 Md. 576, 589, 142 A.2d 810 (1958), "Intention to abandon is strictly a question of fact," citing *Vogler v. Geiss,* 51 Md. 407, 410 (1879). In the context of a dispute between two individuals where one claimed an easement over the land of another, Judge Alvey said for the Court in the latter case:

> The act or acts relied on, however, to effect such result, must be of a decisive character; and while a mere declaration of an intention to abandon will not alone be sufficient, the question, whether the act of the party entitled to the easement amounts to an abandonment or not, depends upon the intention with which it was done, and that is a subject for the consideration of the jury. [*Id.* at 410.]

To similar effect see *Ayres v. Hellen,* 235 Md. 258, 260-61, 201 A.2d 509 (1964); *Knotts v. Summit Park Co.,* 146 Md. 234, 240-41, 126 A. 280 (1924); *Stewart v. May,* 119 Md. 10, 19, 85 A. 957 (1912); and *Glenn v. Davis,* 35 Md. 208, 217 (1872). 2 G. Thompson, *Real Property* § 443 (1961 Repl. Vol., J. Grimes) states:

> Abandonment is a question of fact not of law. The question of whether there has been an abandonment of an easement is usually one of fact for the trial court or jury. The burden of proof to show an abandonment of an easement is upon the party claiming such abandonment, and he must establish the fact by clear and unequivocal evidence. [*Id.* at 779-80 (footnotes omitted).]

*Ayres* makes a similar statement relative to burden of proof at 261, citing *Klein v. Dove,* 205 Md. 285, 107 A.2d 82 (1954), and *Sachs & Sons v. Ward,* 182 Md. 385, 35 A.2d 161 (1943).

In this case Peck relies upon *Libertini v. Schroeder,* 149 Md. 484, 132 A. 64 (1926), and *Jenkins v. Riggs,* 100 Md. 427, 59 A. 758 (1905), for her proposition that the closing of Baltimore Avenue to vehicular traffic and the opening of an alternate route constitutes an abandonment of the easement as a matter of law as of the time of such closure. These cases do not support that proposition.

In *Libertini* a turnpike company had been incorporated with power to build a turnpike road "on the Bel Air Road and running upon and occupying the said Bel Air Road from [the limits of the City of Baltimore] to the old stage or Camp Chapel Road, and from thence on said Bel Air Road to the Little Gunpowder Falls, with power to diverge from the bed of said road when and where it m[ight] be desirable to said company . . . ." The paved surface of the road ended about one mile south of Schroeder's land. The Bel Air dirt road forked at the northwest corner of the Schroeder property. The right fork took the road to the Gunpowder Falls. The left fork went around a hill, ultimately reconnecting with the main road. The right fork fell into disuse by reason of its bad condition until the time when the turnpike company paved it. This paved

portion was a part of that which the turnpike company turned over to the State Roads Commission in 1911. The latter determined to improve the left fork. Judge Parke said for the Court:

> From the opening of the turnpike road in 1886 until its being closed by the State in 1914 or 1915, the public used this turnpike for public travel, and among those using the turnpike highway were the appellants. After the state highway was completed in 1914 or 1915, the public used that highway, but the appellants continued to use the abandoned section of the turnpike or the right branch of the fork until some time in 1923, when the appellee stopped this use by an obstruction. [*Id.* at 494.]

At another point in the opinion the Court referred to "abandonment by the State [of the right fork] in 1924." *Id.* at 496. Peck seizes upon the language of the Court where it said:

> The alteration of the location of the turnpike road was made by competent authority, and it operated as a discontinuance of that section of the turnpike which was thus abandoned. [*Id.* at 494.]

This certainly does not support the proposition here put forward. Libertini was claiming a prescriptive easement over the right fork. The Court said this could not accrue because "[d]uring the period [from] 1886 to 1924 . . . the section of the roadway in dispute was a public highway." *Id.* at 496. One would infer from the statement of the Court that the State Roads Commission took some positive action in 1924 to abandon the right fork, this being some nine or ten years after it completed improvement of the left fork.

Peck also relies upon language in *Jenkins* where the Court said:

> It has been repeatedly decided that an alteration by competent authority of an existing road or way operates as a discontinuance of such portions of the old road as are not embraced within the limits fixed

for the new one even if no formal or special order of closing or discontinuance is passed. *Commonwealth v. Boston,* 150 Mass. 174; *Mill Creek Township v. Reed,* 29 Penna. 195; *Classe v. Hamblet,* 27 Vt. 728; *Brook v. Horton,* 68 Cal. 554. [*Id.* 100 Md. at 438.]

That statement must be put in the context of the case. Riggs' farm was bisected by a road which he wished to close. The Court said, "This old road had been used by the public for more than a century but there is no evidence that the title to its bed had ever been acquired by the County Commissioners." *Id.* at 429. It apparently had fallen into disrepair and the roads' engineer of the county was of the view that it would cost a substantial amount of money to put it in proper condition. Riggs consulted the county commissioners. Several schemes were considered. Ultimately an agreement was reached between Riggs and the County Commissioners of Baltimore County by which upon the opening of two new roads the bisecting road would be closed. Riggs conveyed the bed of the new roads to Baltimore County. The county commissioners went through the procedures established by statute for closing the old road. No appeal was taken. Then Jenkins sought to enjoin Riggs from obstructing the bisecting road. Immediately prior to the statement cited by Peck which we have quoted, the Court said:

The proceedings in this case were not separate and independent applications for the opening of the new roads and the closing of the old one. They were in the nature of proceedings to alter the location of an existing road to be accomplished, as such alteration must be, by closing a portion of the old road and opening the new ones to public travel in its place and stead. It was therefore proper for the commissioners to make the agreement with Mr. Riggs that the old road should be closed through his farm in consideration of his conveying to them the land for the new ones. As he was the owner of the land on both sides of the entire portion of the old road which

was closed no other action than that taken by the commissioners was necessary to authorize him to enclose it and appropriate it to his own use. [*Id.* at 438.]

Although *Jenkins* and *Libertini* do not support the proposition espoused by Peck, those cases are entirely consistent with the general law of this State. In *Cooper v. Sanford Land Co.,* 224 Md. 263, 167 A.2d 602 (1961), the Court remanded the case under Maryland Rule 871 a because of an inadequate record. However, in discussion of whether or not a public road had been closed, Judge Prescott said for the Court:

> This Court has held that two elements are necessary to show an abandonment, namely, an intention to abandon, and an overt act, or an omission to act, by which such intention is carried into effect; and mere nonuser, of itself, is not any evidence of abandonment, unless it continues for the period of limitations of actions to recover the right or property. *Landay v. MacWilliams,* 173 Md. 460, 196 A. 293 [(1938)]. [*Id.* at 266-67.]

Our law is entirely consistent with *Floreth v. State Highway Commission,* 472 S.W.2d 614 (Mo. 1971), and *City of Rockland v. Johnson,* 267 A.2d 382 (Me. 1970), on which one party or another relies. Those cases are also consistent with each other.

In the context of this case the mere relocation of the street in question does not establish as a matter of law an intent to abandon. Whether the County has any such intent is a question of fact and for there to be an abandonment this intention must be found by the trier of fact.

## II Scope of the Easement

The use to which the County proposes to put the land in question is relevant to whether it has an intention to abandon. If it were to be found that the contemplated use were within the scope of the easement this could be evidence of a lack of

intention to abandon. If the contemplated use were not within the scope of the easement, then unless it be found that some other permitted use is being made, it is *possible* that an intention to abandon might be found, although if the contemplated use is found not to be within the scope of the easement this would not necessarily establish an intention to abandon.

Whether the mini-park is a use within the scope of the easement is an important factor for another reason. If it is within that scope, then the parties are in agreement that $1.00 is the value of the fee subject to the easement the County claims to hold. If it is not within the scope of the easement, then the value of the fee may be more than $1.00 even if an intention to abandon is not found.

We have previously referred to *D. C. Transit Systems v. S.R.C.,* 259 Md. 675. There the transit company in its effort to establish that it had not abandoned its easement "proffered to prove that it had made agreements for use of part of the land with various utilities for the installation of their lines or pipes." *Id.* at 689. We said, "It is clear that under the holdings of our predecessors the Transit Company had no right to enter into these agreements," citing and quoting from *Sapp v. Northern C.R.R.,* 51 Md. 115, 124-25 (1879), and *Amer. Tel. & Tel. Co. v. Pearce,* 71 Md. 535, 548, 18 A. 910 (1889). We cited also *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 460, 65 A.2d 580 (1949); *Telephone Co. v. Tyson,* 160 Md. 298, 301, 153 A. 271 (1931); and *Potomac Elec. Power Co. v. Wall,* 153 Md. 229, 233, 137 A. 899 (1927).

In *Sapp* there was a contention that a prescriptive right to an easement for a private footway had been established alongside of or between the tracks of a railroad corporation. The Court pointed out that in order to establish a prescriptive right there must be a claim under or through someone who had a right to grant or create the easement claimed. It said it was an almost self-evident proposition "[t]hat a railroad corporation has no power or right to grant an easement like this, of *footways* for persons to walk along their tracks or by the side of them," adding that "[i]t is obvious that if such power existed and were exercised it would be subversive of

the very purposes for which railroad charters are granted." *Id.* 51 Md. 124-25 (emphasis in original).

In *Pearce* the question before the Court was whether telegraph and telephone lines might be created on a railroad right-of-way for the purpose of transmission of messages other than for railroad purposes. The Court referred to the doctrine "recogniz[ing] the right of the land-owner to compensation for every additional burden cast upon the land outside the scope of the original easement, and that whether a given structure creates an additional servitude is a question of fact, depending on the circumstances of each case, to be determined by the tribunal having jurisdiction to try the same, and before which it is tried." *Id.* 71 Md. at 543. In this context it said:

> Casting an additional burden, for such a purpose, on land already subject to an easement, is just as much taking it for public use, as was the taking of it for the original easement . . . . [*Id.* at 548.]

Certain uses of streets or highways have been held to create additional burdens while others do not. For instance, in *Poole v. Falls Road Ry.,* 88 Md. 533, 41 A. 1069 (1898), and *Peddicord v. Baltimore C. & E. M.R.R.,* 34 Md. 463 (1871), the laying of rails for a street railway and a "horse passenger railway" were held to be within the scope of the easement previously granted. In *Poole* the Court observed:

> The laying of rails on a street and the running of cars thereon for the accommodation of persons desiring to use the street, is not a new use, because it is only a new mode of using the street for the purposes for which it was originally taken. *Peddicord v. Railway Co.,* 34 Md. 463. The test therefore of what is a new use would seem to be found not necessarily in the nature of the structure nor in the number of the tracks but in the use itself; whether it is promotive of the objects and purposes for which the easement in the public was acquired. [*Id.* 88 Md. at 537.]

However, when an attempt was made to place railroad tracks

in the bed of a Baltimore street the Court said in *Phipps v. Western Md. R.R.,* 66 Md. 319, 323, 7 A. 556 (1887), "[A] new burden was imposed on [the property owners'] estate, above and beyond the original servitude to which it was subjected at the time the street was opened. The property was put to a use entirely different from that required by the public in the case of a street."

As to permitted and nonpermitted uses also see 3 H. Tiffany, *The Law of Real Property* § 926 at 601-02 (3d ed. B. Jones 1939). This author comments, "[I]f the land within the highway limits is afterwards used for a purpose, even though of a public nature, which is not within the scope of the highway use for which the land was dedicated or appropriated, it is considered that the land is subjected to an additional burden or 'servitude,' entitling the owner to compensation as for a new taking of property." *Id.* at 600-01. To similar effect see 2 *American Law of Property* § 9.52 (1952).

The rights acquired in a highway easement were set forth by this Court in *C. & P. Tel. Co. v. Board of Forestry,* 125 Md. 666, 94 A. 322 (1915):

> Subject to qualification under special conditions, the general rule is that in the case of an ordinary highway the public acquires only an easement of passage and its incidents, and the owner of the soil subject to this servitude is entitled, except so far as required for highway purposes, "to the earth, timber and grass growing thereon, and to all minerals, quarries and springs below the surface." *Chesapeake & Potomac Telephone Co. v. Mackenzie,* 74 Md. [36,] 47. [*Id.* at 672-73.]

As it is put in *Ches. & P'T'M'C' Tel. Co. v. Mackenzie,* 74 Md. 36, 47, 21 A. 690 (1891), "[I]n the case of an ordinary road or highway in the country ... all the public acquires is the easement of passage and its incidents ...." However, our cases do recognize that there is a difference in this regard

between an easement for a rural highway and one for "an ordinary street in a town," there being the right to place such utilities as gas or water beneath a street in towns. *Frederick Gas Co. v. Abrams,* 264 Md. 135, 146, 286 A.2d 766 (1972); *Green v. Wash. Sub. San. Comm'n,* 259 Md. 206, 219-20, 269 A.2d 815 (1970); *Turner v. Wash. Sanitary Comm.,* 221 Md. 494, 499, 158 A.2d 125 (1960); and *Water Co. v. Dubreuil,* 105 Md. 424, 432, 66 A. 439 (1907).

The proposed use to be made of the land in question must be evaluated in the light of these principles.

## III Summary Judgment

Maryland Rule 610 d 1 provides for granting summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." We have said many times that the function of a summary judgment proceeding is not to try the case or to attempt to resolve factual issues, but to ascertain whether there is a dispute as to a material fact sufficient to provide an issue to be tried. *Honaker v. W. C. & A. N. Miller Dev. Co.,* 285 Md. 216, 231, 401 A.2d 1013 (1979), and cases there cited. Moreover, all inferences must be resolved against the moving party when a determination is made as to whether a factual dispute exists, even if the underlying facts are undisputed. *Honaker* at 231; *Merchants Mortgage Co. v. Lubow,* 275 Md. 208, 217, 339 A.2d 664 (1975); and cases cited in *Honaker* and *Lubow.* Also, as pointed out in *Honaker* and *Porter v. General Boiler Casing Co.,* 284 Md. 402, 413, 396 A.2d 1090 (1979), citing *Fenwick Motor Co. v. Fenwick,* 258 Md. 134, 138, 265 A.2d 256 (1970), "[E]ven where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact."

Even though the facts here are undisputed they are susceptible of more than one permissible inference. The

closing of the land in dispute to vehicular traffic gives rise to an inference of abandonment. On the other hand, the announced intention of using it for a mini-park is susceptible of an inference that the County does not intend to abandon the easement. It would be substantial evidence of an intent not to abandon if the mini-park were found to be within the scope of the original easement. A triable issue of fact arises on that question since, as previously indicated, our cases hold that a use not within the scope of the original easement is a new taking. It may well be that in some places at some times a mini-park is constructed as a part of a highway system. That, however, is not determinative of the factual question of whether the use contemplated to be made here comes within the scope of the easement which the County possessed for the passage of persons and vehicles. Our cases clearly indicate that whether or not an abandonment has taken place is to be determined by the trier of fact and that intention is a very important factor. Accordingly, on this record the trial judge erred in granting summary judgment.

### IV Action on the Remand

In summary, we hold that if on the remand Peck establishes an abandonment on the part of the County to the satisfaction of the trier of fact, then she is entitled to have her land valued upon the basis of an unencumbered fee simple title. If the trier of fact finds that the mini-park use is not within the scope of the County's easement, this may be taken into consideration in determining whether the County has abandoned since it will be a use different from that for which the easement is held. If no abandonment is found but it also is found that the mini-park use is not within the scope of the County's easement, this is an additional burden upon the fee for which the owner is entitled to compensation. In the latter event, however, because there will be a finding that the land is subject to a public easement for street purposes, the value of that which is taken will not be as high as it would be if Peck

were possessed of an unencumbered fee simple title as would be the case if an abandonment were found.

> *Judgment reversed; case remanded to the Court of Special Appeals for passage of an order reversing the judgment of the Circuit Court for Baltimore County and remanding the case to that court for trial, appellee to pay the costs.*