## RYAN
### v.
### BETHLEHEM SPARROWS POINT SHIPYARD, Inc.
#### No. 6624.

United States Court of Appeals Fourth Circuit.

Argued Nov. 10, 1953.

Decided Dec. 12, 1953.

Robert E. Coughlan, Jr., Baltimore, Md. (Robert G. Sheller, Baltimore, Md., Joseph J. Brophy, New York City, and Lord, Whip and Coughlan, Baltimore, Md., on brief), for appellant.

Norman P. Ramsey, Baltimore, Md. (Rignal W. Baldwin, and Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Ryan brought a civil action in the United States District Court for the District of Maryland against Bethlehem Sparrows Point Shipyard, Inc., (hereinafter called Bethlehem), seeking damages for

personal injuries alleged to have been received by him as the result of Bethlehem's negligence. The District Judge, on motion of Bethlehem, dismissed Ryan's complaint. On appeal, we held the motion was improvidently granted and remanded the case for further proceedings, 4 Cir., 192 F.2d 636.

On remand, the motion to dismiss was again granted. This motion was argued before the District Judge on a stipulation embracing facts material to the controversy as well as upon the pleadings, interrogatories and answers thereto, requests for admissions and answers thereto and upon two written contracts. Ryan has again appealed to us.

Appellant's complaint stated:

" * * * on or about March 24, 1950, the Plaintiff was lawfully and rightfully on the premises of the Defendant and had been engaged in changing a valve on a machine in the hold of a vessel which was being constructed by the Defendant, its agents, servants and employees, at Defendant's shipyard, Sparrows Point, Maryland, said vessel being known as Hull No. 4478. * * * The Plaintiff further states that he had completed his work and at about 3:30 P. M., was in the act of leaving the aforesaid vessel and while carefully and prudently using the scaffolding, planking or catwalks, which had been erected or built on said vessel by the Defendant, its agents, servants and employees, the scaffolding, planking or catwalks suddenly and without warning gave way and collapsed, causing the Plaintiff to fall a distance of about twelve (12) feet and as a result thereof to sustain serious, painful and permanent injuries * * *."

Appellee's motion to dismiss contained the following allegations:

"That the plaintiff was at the time of the accident an employee of the Carrier Corporation, a sub-contractor employed by the defendant to perform certain work necessary in the construction of said vessel and as such was under the coverage of the Workmen's Compensation Act of Maryland, Art. 101 Flack's Annotated Code of Maryland. That the defendant has secured compensation to its employees and their defendants in accordance with the provisions of the Workmen's Compensation Act, Art. 101, Flack's Annotated Code of Maryland, and the remedy of the plaintiff under the Workmen's Compensation Act is exclusive."

Article 101, § 63, of the Maryland Code provides:

"When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as sub-contractor, for the execution by or under the sub-contractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this Article which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this Article, reference to the principal contractor shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed."

The same Article 101, under Section 68 (3), provides:

"An employee and his employer who are not residents of this State and whose contract of hire is entered into in another State shall be exempted from the provisions of this Article while such employee is temporarily or intermittently within his

State doing work for such non-resident employer, if such employer has furnished workmen's compensation insurance coverage under the workmen's compensation or similar laws of such other State, so as to cover such employee's employment while in this State; provided the extra-territorial provisions of this Article are recognized in such other State and provided employers and employees who are covered in this State are likewise exempted from the application of the workmen's compensation or similar laws of such other State. The benefits under the Workmen's Compensation Act or similar laws of such other State shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this State."

Ryan insists that the contract between the Carrier Corporation, his employer, and Bethlehem was a mere agreement to sell; that, accordingly, Carrier Corporation, under that contract, was a mere seller, not a sub-contractor under Bethlehem as prime contractor. He, accordingly, urges that the Maryland Compensation Acts do not apply to him and that he is, therefore, free to bring the instant civil action against Bethlehem. With this contention we agree. The judgment below must be reversed and the case must be remanded to the District Court for the trial of Ryan's civil action against Bethlehem on its merits.

It is clear from the record that Bethlehem had contracted to build the vessel in question for A. C. Tankers, Inc.; that Ryan was an employee of Carrier Corporation sent temporarily to Bethlehem's Shipyard by his employer. There, Ryan, with Fitzsimmons, and Warren, a service engineer (all employees of Carrier Corporation) proceeded to Hull No. 4478, where they changed a valve on the compressor machine, which was a part of the refrigerating machinery furnished to Bethlehem by Carrier Corporation under the contract between these two corporations. From the opinion below, we quote:

"It was stipulated that the Plaintiff's testimony would be that this compressor machine was not installed or connected to the vessel in any way and was not in operation. Defendant's testimony would agree that said machine was not in operation but would be to the effect that said machine was in place and bolted to the hull."

In any event, we think it is clear that the work done by Ryan and his associates was one step by Carrier Corporation in order to make the refrigerating machinery conform to the terms of the contract between Carrier and Bethlehem.

Equally clear is it that Ryan was not the "supervising engineer" whom Carrier had agreed to supply to place the system in operation and that the system was not, at the time of the accident to Ryan, ready for the operative stage. Under the Carrier-Bethlehem contract, the installation of the refrigerating machinery was to be done by Bethlehem.

The Carrier-Bethlehem contract, designating itself as a Purchase Order, was drawn by Bethlehem. In this contract, Carrier is frequently referred to as "Vendor" ("seller" would have been more appropriate, since the Uniform Sales Act is in effect in Maryland), not as "Sub-contractor." The whole contract is quite consistent with the idea that these terms, "Vendor" and "Sub-contractor," are used as separate and distinct terms, not as synonyms. This is further borne out by the fact that while the contract classifies Carrier as a "Vendor," under the Indemnity Clause of this contract Carrier agrees to indemnify Bethlehem from " * * * (b) any and all demand or demands of every nature * * * arising out of injuries to, or death of any of your employees or of any employees of your (Carrier's) *Sub-contractors* while in, on or near the premises of this Company, etc." (Italics ours.)

Both Bethlehem and Carrier are large corporations with far-flung com-

mercial activities. It seems a fair presumption that in an important contract, such as the one before us, the terms "Vendor" and "Sub-contractor" should be used as terms of art, with the distinctions thereunto appertaining. And the District Judge, in his opinion below, several times refers to this contract as a "Purchase Order." We are familiar with the principle that a contract is to be placed in a legal category by its legal effect and what it is, rather than by what the parties declare it to be. Yet the entire contract here, which is long and complicated, fits more properly into the classification of an agreement to sell rather than into the category of a technical sub-contract. It is, of course, true that the term "sub-contractor" may be used with different meanings in different statutes and different contracts. Cf. Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 108, 109, 64 S.Ct. 890, 88 L.Ed. 1163.

The opinion of the District Judge relies heavily on the case of State, to Use of Hubert v. Bennett Building Co., 154 Md. 159, 140 A. 52. Counsel for Bethlehem stress this case; also State, to Use of Reynolds v. City of Baltimore, Md., 86 A.2d 618. The Bennett case did not discuss whether Joseph B. Dunn & Sons, Inc. was or was not a sub-contractor but assumed that relationship to exist, after stating in the first sentence of the opinion, written by Judge Parke:

> "The Benjamin F. Bennett Building Company, the appellee, is a corporation engaged in the construction of buildings, and, for the purpose of carrying out its undertaking to erect a building, entered into a contract with Joseph B. Dunn & Sons, Inc., a corporation, *to furnish all the necessary work, labor, and materials in the finishing of the tile floors of the building in course of completion.*" (Italics ours.)

We think the assumption was thoroughly justified; but the Bennett-Dunn contract was utterly different from the Bethlehem-Carrier contract before us.

In the Reynolds case, it is quite clear that Archer Iron Works was a sub-contractor. The City of Baltimore engaged a contractor to build a water tunnel.

> "Rosoff was the successful bidder for the work of excavating and lining the tunnel 'and all appurtenant construction necessary for the complete installation as shown on the drawings and/or as specified.' * *

> "Rosoff entered into a contract with Archer Iron Works, Inc., of Chicago, for *'fabrication* and *erection* of the four headframes *complete*, installed in place in accordance with the terms of this agreement',. for $195,000." (Italics ours.) 86 A. 2d at page 619.

Hardly could it be contended that Archer was a mere seller rather than a sub-contractor. The result of its work was integrally incorporated into the tunnel, just as in the Bennett case the tile floors were integrally incorporated into the building. Under the contract before us, the installation of the refrigerating machinery was to be done entirely by Bethlehem.

Our holding that Carrier here was a mere seller, not a sub-contractor, and that the Maryland Workmen's Compensation Act is no bar to the instant common-law action by Ryan against Bethlehem, is sufficient to dispose of this case. We, therefore, find it unnecessary to pass on the other questions raised by counsel, particularly the contention of Carrier: "The Maryland Workmen's. Compensation Act had no application to this case for under Section 68(3) of Article 101 thereof, plaintiff who was a New York resident and secured compensation benefits under the New York Compensation Act, was exempted under principles. of comity from the bar of the Maryland Compensation Act."

The judgment of the District Court is reversed, and the case is remanded to. that Court to proceed with the common-law civil action of Ryan against Bethlehem.

Reversed and remanded.