DALLAS A. HONAKER ET UX. *v.* W. C. & A. N. MILLER DEVELOPMENT COMPANY

[No. 55, September Term, 1978.]

\* \* \*

GARY J. COFFEY ET AL. *v.* THE DERBY STEEL COMPANY

[No. 60, September Term, 1978.]

*Decided May 29, 1979.*

The causes were argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE and COLE, JJ.

In No. 55, *Ferdinand J. Mack* for appellants.

In No. 60, *John T. Enoch,* with whom was *Jeffrey S. Chernow* on the brief for Gary J. and Marsha Coffey and *Hugh E. Donovan* on the brief for St. Paul Fire & Marine Ins. Co., appellants.

In No. 55, *Wade J. Gallagher,* with whom were *William H. Clarke* and *Galiher, Clarke, Martell & Donnelly* on the brief, for appellee.

In No. 60, *David M. Buffington,* with whom were *Donald L. DeVries, Jr.,* and *Semmes, Bowen & Semmes* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

In each of these appeals an injured employee has been paid workmen's compensation for injuries sustained while working in the construction of a building. In each instance, after collecting such compensation through the insurance carrier of his immediate employer, he has brought suit against the corporation with which his employer had contracted, alleging that negligence attributable to such corporation was responsible for his injury. Each such corporation is an appellee here. Each has been held to be a statutory employer under Maryland Code (1957) Art. 101 (the Workmen's Compensation Act), § 62 and thus immune from

any liability other than that for workmen's compensation. We shall affirm as to No. 55, Honaker, but in No. 60, Coffey, we shall reverse and remand for trial.

The facts in these cases are similar but not identical. We consolidated the cases for argument because the same statute is involved and the facts in the two cases resemble one another so closely.

## I — No. 55 — Honaker

Dallas A. Honaker (Honaker) and his wife sued W. C. and A. N. Miller Development Company (Miller). Miller builds and sells houses in Montgomery County. It normally does not build homes to order. In this instance, however, it contracted to build one for an individual who, among other things, desired a slate roof. Miller did not have the men and equipment to install such a roof. Therefore, it employed another corporation to do this particular work. Honaker, an employee of that corporation, was injured while installing the roof. He was paid workmen's compensation by the roofing contractor's insurer. He and his wife then docketed this action against Miller, alleging that the latter provided scaffolding for Honaker's use in the installation of the roof and that this scaffolding was so "negligently constructed and maintained" as to break, causing the injury to Honaker. The first count was to Honaker's use and to the use of the insurer. The Honakers recovered a judgment against Miller in the Circuit Court for Montgomery County. The Court of Special Appeals reversed in *W. C. & A. N. Miller Dev. Co. v. Honaker,* 40 Md. App. 185, 388 A. 2d 562 (1978), holding that Miller met the test relative to Art. 101, § 62 laid down by Judge Orth for this Court in *Honaker v. W. C. & A. N. Miller Dev. Co.,* 278 Md. 453, 365 A. 2d 287 (1976) *(Honaker I).* We held in the earlier case that the trial court had erred in entering summary judgment in favor of Miller. Accordingly, we remanded the case for trial.

Honaker regards as significant here the fact that Miller was the owner of the land on which the building was being constructed. He likewise contends that the installation of the

roof here was not a part of the "trade, business or occupation" of Miller as that term is used in Art. 101, § 62.

## II — No. 60 — Coffey

A general contractor was engaged to erect a building at Anne Arundel Community College. The Derby Steel Company, Inc., made an agreement with the general contractor to furnish and erect the structural steel for the building. Derby in turn contracted with The Prosser Company for the actual erection of the steel. Gary J. Coffey, an employee of Prosser, was injured while working on the structure. Coffey and his wife sued Derby. They alleged negligence on the part of Derby in its design and manufacture of certain of the steel and also claimed a breach of warranty by Derby in its sale of the manufactured goods.

Derby at sometime in the past has erected steel. Its president testified in a deposition that at the time relevant here it had 25 to 30 employees, none of whom were engaged in erection of steel. He said, "Companies in our business generally take the erection, too. In other words, we have always been in the erection business but we don't actually do it, if you see what I mean. We handle it as a sub." Filed as an exhibit in the trial court were copies of pages in the classified section of the Baltimore City telephone directory for the years 1971 to 1976, inclusive, reflecting that Derby advertised itself as a steel fabricator and not as an erector. Derby's president testified that the men who did the actual erection were employed by Prosser, the erection company. He further explained relative to the steel erection:

> Q. And these men, they are not employed by you?
> A. They are employed by the erection company.
>
> Q. They are employed by Prosser? A. That's right. They are a subcontractor of mine. My men are capable of doing it, but if I took them all out of the shop and out into the field and we spent several weeks out there putting it up, I wouldn't be able to produce anything more, would I? That is why I got

out of that business, doing the actual work years ago, you see what I mean? When I was a real small company, why we lots of times did our own erection, and I don't know but it has been an industry trade — what is the word I am thinking of — it is usual practice to buy steel from the fabricator erected.

The Circuit Court for Anne Arundel County granted summary judgment in favor of Derby. The trial judge made the finding required by Maryland Rule 605 a, thus permitting an appeal prior to the end of the whole case. On appeal the Court of Special Appeals affirmed in an unreported opinion (*Coffey et al. v. The Derby Steel Company, Inc., et al.,* No. 1402, September Term, 1977, filed July 20, 1978), relying upon its opinion in *W. C. & A. N. Miller v. Honaker Dev. Co., supra.*

### III The law

The matter here before the Court is whether either Miller or Derby is "a principal contractor" who has "undertake[n] to execute any work which is a part of his trade, business or occupation," a part of which he has contracted with some "other person as subcontractor" to perform. If Miller or Derby is found to come within these terms, then under §§ 62 and 15 of the Workmen's Compensation Act the exclusive remedy of the employee in each instance would be under that act.[1] *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 13, 155 A.

---

1. Code (1957) Art. 101, § 62 provides in pertinent part:

When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this article, reference to the principal contractor shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed.

Where the principal contractor is liable to pay compensation under

2d 691 (1959), and cases there cited. If either Miller or Derby is held not to be a statutory employer of its respective claimant, such claimant may maintain the tort action here for alleged negligence in accordance with § 58 of the Workmen's Compensation Act. *Roland, supra,* 221 Md. at 13, and cases there cited.

At common law, a worker injured in the course of his employment could seek compensation for his injuries and other damages only through an action in tort. *American Coal Co. v. Allegany Co.,* 128 Md. 564, 98 A. 143 (1916), was a case arising under a statute originally enacted by Chapter 153 of the Acts of 1910 for the relief and sustenance of employees injured in coal and clay mining in Allegany and Garrett Counties and the dependents of employees injured or killed in such mining. Judge Burke in that instance was writing for our predecessors subsequent to the passage of our Workmen's Compensation Act concerning a case which arose prior to its enactment. The Court there said:

> The application of the principles of the common law to suits for personal injuries sustained in hazardous employments resulted in many cases in injustice to the parties concerned as well as to the State. It filled the courts with litigation; it became the fruitful source of perjury; it engendered bitterness between employer and employee; it resulted in great economic waste, and it turned out an army of maimed and helpless people as dependents upon the charity of friends or the public. The operation of these rules came to be regarded as "foolish, wasteful, inefficient, and barbarous," and the national Government and a number of the States have now replaced them by efficient and humane laws. [*Id.* at 574.]

---

this section, he shall be entitled to indemnity from any employer, who would have been liable to pay compensation to the employee independently of this section, and shall have a cause of action therefor against such employer.

Nothing in this section shall be construed as preventing a workman from recovering compensation under this article from the subcontractor instead of from the contractor.

It was reactions such as this which led to the appointment by Governor Phillips Lee Goldsborough on May 11, 1913, of a commission "to prepare a bill on the question of Employers' Liability and Workmen's Compensation Laws to be submitted to the General Assembly at its session held in 1914," and the enactment of our Workmen's Compensation Act by Chapter 800 of the Acts of 1914.[2] See the preamble to that statute quoted in *Solvuca v. Ryan & Reilly Co.,* 131 Md. 265, 267, 101 A. 710 (1917). The statute as passed contained a major loophole in that, under its terms, an employer could, by entering into a subcontract for the performance of parts of an entire project, escape liability under the act. Chapter 597 of the Acts of 1916 contained a number of amendments to the existing sections of the Workmen's Compensation Act and added a new section which became § 62. The need for these changes no doubt had been indicated by experience under that act. The purpose of § 62, which has remained unchanged since its enactment, was discussed at length in *State v. Bennett Bldg. Co.,* 154 Md. 159, 140 A. 52 (1928):

> It is common practice in certain trades for one party to agree for a reward to complete a certain

2. Neither the Maryland Workmen's Compensation Act nor the 1910 act concerning coal and clay miners was the beginning of workmen's compensation in Maryland, however, since in an address to the Maryland State Bar Association entitled "Employers' Liability and Workmen's Compensation Laws" J. Walter Lord of the Baltimore Bar stated:

Maryland was the first state in this country to enact legislation partaking of the nature of workman's compensation. The Act of 1902, Chapter 139, was designed to modify the common law defenses in cases both of injuries and death arising out of the prosecution of a few extra-hazardous industries, and to provide for a relief payment of $1,000 in cases of death, to the exclusion of the remedy under Lord Campbell's Act. The act provided that unless the employer contributed to a relief fund, to be administered by the State Insurance Commissioner, he should be penalized in all cases of injury and death, by the removal of the defense of fellow-servant and by the substitution of the rule of comparative negligence for the defense of contributory negligence. The contribution to the relief fund was so much per man employed, graded in accordance with the supposed hazard of the particular industry; and the employer was authorized to deduct one-half the contribution from the wages of each employee. In the case of non-fatal injury the workman's remedy was by suit at common law. In the case of death the exclusive remedy was a claim for $1,000 against the relief fund. With respect to death cases, however, the Insurance Commissioner

work or undertaking, and then to enter into subcontracts with various parties providing for the execution by them respectively of specified parts of the whole work or undertaking, so that the whole or part thereof would be done by such subcontractors and their assistants. In this manner the principal contractor would avoid in part the responsibility for accidents happening in the carrying out of the work or undertaking. If this responsibility were so shifted upon parties too weak financially to meet it, and who had not secured compensation to their employees in one of the ways required by the statute, an injured workman, proceeding at common law or under the Workmen's Compensation Act, would obtain neither compensation nor damages. Furthermore, difficult questions arose with reference to whether the workman was the servant of the principal contractor rather than of his immediate employer, depending largely upon who had power to hire and discharge, to direct and control the workmen, and a variety of other circumstances. In order to obviate these contingencies, and more certainly to assure the workman his contemplated compensation, the statute has imposed, under a certain state of circumstances, a liability to pay upon the principal contractor, although he might not have been held at common law the employer of the injured workman. [*Id.* at 161-62.]

The Court spelled out the impact of the statute:

The effect of this provision, when brought into operation through the designated state of circumstances, is to impose the absolute liability of an employer upon the principal contractor, when he was not in law the employer of the injured workman. The result then is that where the prescribed

---

had plenary power to determine all disputes; his decision was final, and not reviewable by the courts. [17 Trans. Md. St. B. A. 175, 199-200 (1912).]

conditions exist, the principal contractor becomes by the act the statutory employer of any workman employed in the execution of the work. [*Id.* at 162.]

In *Honaker I* Judge Orth discussed for the Court a number of our prior cases including *Bennett Building Co.* The Court said:

It is manifest on the face of § 62 of Art. 101, that in order to invoke its provisions there must be:
(1) a principal contractor [4]
(2) who has contracted to perform work
(3) which is a part of his trade, business or occupation; and
(4) who has contracted with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work. [*Id.* 278 Md. at 459-60.]

We quote from n. 4 of that opinion:

**4.** "Principal contractor" is not synonymous with "general contractor." In Kegley v. Vulcan Rail & Constr. Co., 203 Md. 476, 101 A. 2d 822 (1954), we rejected an attempt to read the words "principal contractor" in the statute as referring to the general contractor. We said, at 480, 101 A. 2d at 823: "We find no such limitation in the language or purpose of [§ 62] and the last paragraph dealing with the interpleading of intermediate contractors when a claim is filed, is clearly predicated upon their liability for compensation." [*Id.* 278 Md. at 460.]

The record before us in that case did not include "a contract on the part of Miller to build a house." *Id.* at 463. This was the reason for the remand. However, the exhibits filed by Miller on the remand included a "custom building contract" between it and Mr. and Mrs. Dejanikus, for whom the house was being built.

Statutes such as ours are discussed in 1B A. Larson,

*Workmen's Compensation Law* § 49.12 (1978). He states that, despite variations in language,

> with a surprising degree of harmony, the cases applying these assorted phrases agree upon the general rule of thumb that the statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees. Of course, when the statute says expressly (as many do) that a contractor who subcontracts any part of his own contract becomes the statutory employer of the subcontractor's employees, the question whether the subdivided work is part of the principal contractor's work usually answers itself. The very fact that it is a parcelled-out fraction of the main job is proof enough. In such a case, as when a building contractor subcontracts the plumbing work, it would be no defense on the part of the building contractor that it is customary to get such work done through independent contractors. [*Id.* at 9-12 (footnote omitted).]

Larson then goes on to discuss in some detail cases involving variations of facts and statutory terminology. *Id.* at 9-13 — 33. However, these cases do not involve situations where the principal contractor is a general contractor of a project such as a construction contract. As the author makes clear in the last two sentences of the passage quoted above, these cases are in a different and analytically less difficult category. Our statute here states that a contractual relationship must exist between the principal contractor and the immediate employer for there to be liability for an award for workmen's compensation. This Court has so interpreted § 62. *Warren v. Dorsey Enterprises,* 234 Md. 574, 578, 200 A. 2d 76 (1964); *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 19, 155 A. 2d 691 (1959); and *Long Co. v. State Accident Fund,* 156 Md. 639, 647, 144 A. 775 (1929). Thus, according to Larson, the fact that the work done by an individual's employer "is a parcelled-out fraction of the main job is proof enough" that one who parcels out is also a principal contractor.

The bases for determining whether a firm is a statutory employer can perhaps be better understood by reference to two cases holding that firms were not statutory employers. In *Ryan v. Bethlehem Sparrows Point Shipyard,* 209 F. 2d 53 (4th Cir. 1953), the court held that a shipbuilder was not the statutory employer of an employee of a refrigerating company. The employee had been sent on board a ship to correct faulty equipment sold by his employer to the shipbuilder. Judge Dobie pointed out for the court that in *Bennett* all the necessary work, labor and materials in the finishing of the tile floors of the building were to be provided by the subcontractor and that in *State v. City of Baltimore,* 199 Md. 289, 298, 86 A. 2d 618 (1952), Archer Iron Works, Inc., contracted with the general contractor on a tunnel project in Baltimore City for fabrication and erection of four head frames complete, installed in place in accordance with the terms of the agreement between Archer and the general contractor. He said for the court:

> Hardly could it be contended that Archer was a mere seller rather than a sub-contractor. The result of its work was integrally incorporated into the tunnel, just as in the Bennett case the tile floors were integrally incorporated into the building. Under the contract before us, the installation of the refrigerating machinery was to be done entirely by Bethlehem. [*Id.* 209 F. 2d at 56.]

In *Warren v. Dorsey Enterprises, supra,* 234 Md. 574, Warren was injured while starting a stock car race at the Dorsey Raceway which was owned by Dorsey Enterprises, Inc. He was employed by Free State Stock Car Racing Association, Inc., a corporation which conducted the races. In holding that Dorsey "was not the principal contractor, and hence not a statutory employer of Warren under ... sec. 62," Judge Henderson said for the Court, "Dorsey did not contract to produce or stage stock car races. Thus, the agreement between Warren and Free State does not fall into the category of a subcontract, and the statutory provision is inapplicable." *Id.* at 579.

Further insight is provided by the language used by Judge Parke for the Court in *Bennett Building Co., supra,* 154 Md. 159. As indicated in *Ryan,* Bennett was the principal contractor for the construction of an office building. It let a subcontract for the placement of tile on the floors of the building. The main issue was whether § 62 operated to shield the principal contractor from liability. Our predecessors found that it did. *Id.* at 167-68. Judge Parke said for the Court in discussing the scope of § 62:

> Although acting independently of the other, the principal contractor and the subcontractor, with his workmen employed in the execution of the work, were each, in his own separate capacity, co-operating toward the execution of the whole of a particular work which the principal contractor had promised to perform; and the liability of the principal contractor to pay compensation to the employees of the subcontractor is confined to only these employees who were actually engaged in the execution of the whole or a portion of that one piece of work at the time of injury.
>
> It is this necessary employment of the employee of the subcontractor upon the piece of work which the principal contractor has agreed to perform that forms the basis of the statutory relation between the workman and the principal contractor, and, although it does not establish the relation of master and servant, as known to the common law, because of the intervention of the subcontractor as the workmen's master, yet the act creates a status which for the purposes of the act is that of employer and employee, as is explicit in the provision of section 62 that the principal contractor must pay compensation "as if that workman had been immediately employed by him." [*Id.* at 166.]

Accordingly, it will be seen that the Court spelled out one version of the test set forth in *Honaker I,* that each employer must be, "in his own separate capacity, co-operating toward

the execution of the whole of a particular work which the principal contractor had promised to perform . . . ."

## IV The decision as to Honaker

It must be remembered that there was an actual trial in the Honaker case, unlike the situation with reference to Coffey. *Bennett* is squarely applicable here. In that case laying the tiles on the floor was held to be a part of the work for which the principal contractor was responsible. Honaker's employer, "in his own separate capacity," was "co-operating [with Miller] toward the execution of the whole of a particular work . . . which the principal contractor [, Miller,] had promised to perform," the erection of a house.

Honaker would have us read "part of his trade, business or occupation" too narrowly. He argues that because Miller does not have employees who put roofs on houses this is not part of its "trade, business or occupation . . . ." There is no question but that Miller is in the business of building and selling homes. From time immemorial shelter from the elements has been regarded as one of the necessities of life. Any structure with four walls must have a roof on it before it may be considered a house. Thus, a contention that the installation of a roof is not part of the "trade, business or occupation" of building homes is without merit. Equally without merit is the claim that because Miller owns the land upon which it is erecting the houses which it sells, its "trade, business or occupation" does not include the construction of homes.

We have reiterated rules for statutory construction many times. In *Baltimore Gas & Elec. v. Department,* 284 Md. 216, 219, 395 A. 2d 1174 (1979), we quoted from *Police Comm'r v. Dowling,* 281 Md. 412, 379 A. 2d 1007 (1977), relative to statutory construction, in which latter case we cited a number of cases for each of the statements made:

> The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent the Court considers the

language of an enactment in its natural and ordinary signification. ... A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. ... A court may not insert or omit words to make a statute express an intention not evidenced in its original form. ... The General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. ... Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory .... [*Id.* at 418-19.]

*Gifford v. Nottingham,* 68 Idaho 330, 193 P. 2d 831 (1948), cited and quoted extensively from *Bennett.* The court there observed:

The benefits to the workmen in having sure and certain rights and remedies under the Workmen's Compensation Law against the proprietor or main contractor, as well as against the subcontractor, outweigh the occasional advantage that might accrue to him in an action at law. [*Id.* at 339.]

We agree. We hold Miller to be a statutory employer. The statute in question was meant primarily to protect employees, not to provide them an additional remedy for their injuries.

## V The decision as to Coffey

In *Honaker I* Judge Orth observed for the Court:

The precise issue for decision is whether the trial court was correct in granting summary judgment. Maryland Rule 610, § d 1 spells out two

requirements for the grant of the judgment. It provides that the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show (1) that there is no genuine dispute as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. [*Id.* 278 Md. at 458.]

The function of a summary judgment proceeding is not to try the case or to attempt to resolve factual disputes, but to determine whether there is a dispute as to material facts sufficient to provide an issue to be tried. *Dietz v. Moore,* 277 Md. 1, 4-5, 351 A. 2d 428 (1976), and cases there cited.

A part of the controversy here involves the use of Saxe clips. Thus, it is interesting to note that Derby, in its demurrer to Coffey's second amended declaration, stated that the declaration "shows on its face that [Derby] 'designed, manufactured, sold and delivered' structural steel beams to be used by others for a particular purpose," and therefore Code (1957, 1971 Repl. Vol., 1971 Cum. Supp.), Art. 43, § 54D, which makes it unlawful to use Saxe clips "in any construction involving the use of structural iron or steel is not applicable" to Derby. There is a similar demurrer to Coffey's first amended declaration. In it Derby says that the declaration "shows on its face that [Derby] was a 'designer, manufacturer and vendor' of steel beams and that said steel beams were 'used' in construction" by people other than Derby, thereby barring any liability under Art. 43, § 54D.

In determining whether a factual dispute exists, even if the underlying facts are undisputed, all inferences must be resolved against the moving party. *Merchants Mortgage Co. v. Lubow,* 275 Md. 208, 217, 339 A. 2d 664 (1975); *James v. Tyler,* 269 Md. 48, 53-54, 304 A. 2d 256 (1973); *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 14, 155 A. 2d 691 (1959); *White v. Friel,* 210 Md. 274, 285, 123 A. 2d 303 (1956). It follows, therefore, that since Derby was the one making the motion for summary judgment, the evidence in the deposition and

exhibits and the reasonable inferences which might be derived therefrom must be considered in a light most favorable to Coffey. We recently said in *Porter v. General Boiler Casing Co.,* 284 Md. 402, 396 A. 2d 1090 (1979):

> The function of the trial judge on such a motion is said to be much the same as that which he performs at the close of all the evidence in a jury trial when motions for a directed verdict or requests for peremptory instructions require him to determine whether an issue requires resolution by a jury or is to be decided by the court as a matter of law. *Washington Homes* [*v. Inter. Land Dev.,* 281 Md. 712,] 716 [, 382 A. 2d 555 (1978)]; *Lynx, Inc. v. Ordnance Products,* 273 Md. 1, 8, 327 A. 2d 502 (1974); and *Salisbury Beauty Schools v. St. Bd.,* 268 Md. 32, 41, 300 A. 2d 367 (1973). Moreover, "even where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact." *Fenwick Motor Co. v. Fenwick,* 258 Md. 134, 138, 265 A. 2d 256 (1970), and cases there cited. It follows, accordingly, that if there is a conflict between the inferences which may be drawn from that before the court, summary judgment is not proper. [*Id.* at 413.]

It will be recalled that the test laid down in the statute and in *Honaker I* for a determination of whether an individual is a statutory employer requires proof, among other things, that he "has contracted to perform work which is a part of his trade, business or occupation . . . ." The sum total of that which was before the trial judge on the motion for summary judgment is susceptible of an inference that Derby is no longer engaged in "the trade, business or occupation" of steel erection. Accordingly, the matter should be tried so that a

finding of fact may be made as to whether Derby is in the steel erection business.

> *As to Appeal No. 55:*
> *Judgment affirmed; appellants to pay the costs.*
>
> *As to Appeal No. 60:*
> *Judgment reversed and case remanded to the Court of Special Appeals for passage of an order reversing the judgment of the Circuit Court for Anne Arundel County and remanding the case to it for further proceedings consistent with this opinion; appellee to pay the costs.*